UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THOMAS SWIDER,

          Petitioner,          Case No. 1:25-cv-531

v.                                   Honorable Hala Y. Jarbou

MATT MACAULEY,

          Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.        Factual Allegations**

Petitioner Thomas Swider is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Following a jury trial in the Macomb County Circuit Court, Petitioner was convicted of five counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(a) and (2)(b), and two counts of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c(1)(a) and (2)(b). *See People v. Swider*, No. 363450, 2023 WL 8106290, at *1 (Mich. Ct. App. Nov. 21, 2023). On May 2, 2022, the trial court sentenced Petitioner to concurrent sentences of 25 to 50 years for the CSC-I convictions and 9 to 15 years for the CSC-II convictions. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=695973 (last visited May 9, 2025). Notably, with respect to the CSC-I convictions, the "trial court imposed the statutorily-required minimum sentence of 25 years' imprisonment." *See Swider*, 2023 WL 8106290, at *1.

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. In a counseled brief, Petitioner raised the following claims of error: (1) the trial court erred by admitting hearsay testimony pursuant to Michigan Rule of Evidence 803A; (2) the prosecutor committed misconduct by asking one of the victims leading questions; (3) the 25-year mandatory minimum sentence constituted cruel and/or unusual punishment; and (4) Petitioner's sentence violated the separation of powers doctrine "by impermissibly limiting the trial court's sentencing discretion." *Id.* at *2. In a *pro per* supplemental brief, Petitioner raised the following arguments: (1) his CSCI-I convictions violated Article I, § 28(1) of the Michigan Constitution by impinging upon his right to reproductive freedom; (2) Mich. Comp. Laws § 750.520b is unconstitutional under the Establishment Clause of the First Amendment to the

United States Constitution; (3) Mich. Comp. Laws § 750.520b is unconstitutionally vague; (4) he was denied his right to an impartial jury; (5) the prosecutor and the trial court erred during *voir dire*, and counsel was ineffective for failing to object to the purportedly faulty questions; (6) jury deliberations were unfairly influenced because the trial court required the jurors to wear masks due to the COVID-19 pandemic, and the jury quickly found him guilty because of a desire to remove their masks; (7) Mich. Comp. Laws § 750.520b violates the Eighth Amendment to the United States Constitution; and (8) Petitioner was subjected to excessive bail and his pretrial detention prevented him from searching for exculpatory evidence to present at trial. *See generally id.*

The Michigan Court of Appeals set forth the following facts underlying Petitioner's convictions:

> This case arose from allegations that Swider inflicted frequent sexual abuse on his granddaughter, DS, and her childhood friend, EW, during the summers of 2013 to 2015. The complainants were around five to eight years old, and in first to third grade, when the abuse occurred. Swider lived in Arizona at the time, but he visited and stayed with DS and her family in Michigan over the summers. EW was DS's best friend, and she came over to DS's house almost every day during the summer. Among several allegations of abuse, the complainants testified that Swider sexually penetrated one or both of them with his mouth, finger, penis, and an object, and that he touched their breasts. DS and EW were often in the room together when the abuse took place. Swider told DS not to disclose the abuse because that would break Swider's rule to "never betray" him.
>
> When the abuse occurred, DS and EW never talked to each other about it. The complainants drifted apart after third grade, but they sometimes checked in on one another and first spoke about the abuse in eighth grade. In June 2020, DS disclosed the abuse to her mother's close friend, who DS called her aunt, and then DS told her mother. Afterward, DS's mother told Swider, who had been making plans to visit the family, not to come. Swider asked if the reason for the change in plans was because of something he said; DS's mother told him it was because of something DS and EW said. Over the next several months, Swider sent peculiar birthday cards to DS and her family. In a birthday card to DS's mother, Swider wrote:
>
>> I don't know what they told you. Some of it might be true, none of it might be true, or all of it might be true. It doesn't matter. The only thing that mattered was your reaction.

3

> In another birthday card addressed to DS, Swider reminded DS of his rules:
>
> > Rule number one, I will love you always regardless. Rule number two, I will never betray you like snitching. Rule number three, I will never lie to you.
>
> And in a birthday card to DS's sister, Swider wrote that "[DS] and [EW] threw me under the bus."
>
> The jury found Swider guilty on all counts. The five CSC-I convictions consisted of two counts involving EW for sexual penetration by Swider using his finger and penis, and three counts involving DS for sexual penetration by Swider using his mouth/tongue, finger, and an object. The two CSC-II convictions consisted of one count each for intentionally touching EW and DS on their breasts or the clothing covering that area. As noted, for the CSC-I convictions, the trial court imposed the mandatory minimum sentence of 25 years' imprisonment required under MCL 750.520b(2)(b).

*Id.* at *1.

On November 21, 2023, the court of appeals rejected all of Petitioner's arguments and affirmed his convictions and sentences. *See id.* The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 29, 2024. *See People v. Swider*, 5 N.W.3d 33 (Mich. 2024). Petitioner did not seek certiorari from the United States Supreme Court.

On May 8, 2025, Petitioner filed his federal habeas corpus petition, raising the following four grounds for relief:

> I.    M.C.L.S 750.520 establishes religious moral orthodoxies prohibited by U.S. Constitution Article I.
>
> II.   MCL 750.520b is ambiguous, vague[,] and misleading.
>
> III.  M.C.L.S. Constitution Article I, § 28(1) protects me from prosecution under M.C.L.S. 750.520.
>
> IV.   My attorney rested the defense before all my evidence was in. Proofs reopened but evidence edited.

(§ 2254 Pet., ECF No. 1, PageID.5–10.)

4

## II.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

5

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

6

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A.  Grounds I and II—Constitutionality of Mich. Comp. Laws § 750.520b

In his first two grounds for relief, Petitioner challenges the constitutionality of Mich. Comp. Laws § 750.520b, the statute under which he was convicted. The Court considers each argument in turn below.

##### 1.  Ground I—First Amendment Challenge

In ground I, Petitioner suggests that Mich. Comp. Laws § 750.520b is unconstitutional under the First Amendment to the United States Constitution because it "establishes religious moral orthodoxies." (§ 2254 Pet., ECF No. 1, PageID.5.) Petitioner contends that sexual activity is not a crime, and that sexual conduct "is therefore extrajudicial." (*Id.*) He argues that the "human body is not an element of crime," and that individuals "have no control over how it appears or its sexual inclinations." (*Id.*, PageID.17.) Petitioner suggests that by establishing these religious mores, state and federal governments have "insulate[d] and isolate[d] minors from knowledge."

7

(*Id.*, PageID.22.) Petitioner goes on to reference Edgar Allan Poe's marriage at age 27 to his 13-year-old first cousin and that this marriage shows an "ancient roots" connection that grants Petitioner a "Fourteenth Amendment right to sexual conduct with minors." (*Id.*, PageID.26.)

Petitioner raised this argument on direct appeal, and the Michigan Court of Appeals summarily rejected it, stating:

> Undeterred, Swider perplexingly argues that MCL 750.520b constitutes an establishment of religion prohibited by the First Amendment of the United States Constitution. Among other things, the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const., Am. I. Known as the Establishment Clause, this provision prohibits the government from engaging in impermissible religious coercion. *See Kennedy v. Bremerton Sch. Dist.*, ⸺ US ⸺; 142 S. Ct. 2407, 2429; 213 L. Ed. 2d 755 (2022). Swider again offers no legal or factual support for his Establishment Clause argument, beyond bizarrely suggesting that the criminalization of child sexual abuse is merely "religion in disguise." This argument is abandoned. *See McPherson*, 263 Mich. App. at 136.

*Swider*, 2023 WL 8106290, at *8.

The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." *See* U.S. Const. amend. I. With respect to making a determination as to whether governmental action violates the Establishment Clause, the United States Court of Appeals for the Sixth Circuit has provided the following summary:

> To decide whether a governmental action violates the Establishment Clause, we must weave together three main jurisprudential threads. The first thread is the "*Lemon* test," named after the Supreme Court's decision in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). Under that test, the action comports with the Establishment Clause only if it satisfies three distinct prongs. First, the activity must "have a secular legislative purpose." *Id.* at 612, 91 S. Ct. 2105. Second, "its principal or primary effect must be one that neither advances nor inhibits religion." *Id.* Third, it "must not foster 'an excessive government entanglement with religion.'" *Id.* at 613, 91 S. Ct. 2105 (quoting *Walz v. Tax Comm'n,* 397 U.S. 664, 674, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970)).
>
> The next thread is an "endorsement" analysis, first discussed by Justice O'Connor in *Lynch v. Donnelly,* 465 U.S. 668, 104 S. Ct. 1355, 79 L. Ed. 2d 604 (1984). As Justice O'Connor intended, *Lynch,* 465 U.S. at 688, 104 S. Ct. 1355 (O'Connor, J., concurring), the Sixth Circuit "has treated the endorsement test as a refinement or

8

clarification of the *Lemon* test." *Granzeier v. Middleton,* 173 F.3d 568, 573 (6th Cir.1999); *see also, e.g.*, *Satawa v. Macomb Cnty. Rd. Comm'n,* 689 F.3d 506, 526 (6th Cir.2012) (explaining the Sixth Circuit's application of the *Lemon* test); *Am. Civil Liberties Union v. Grayson Cnty.*, 591 F.3d 837, 844–45 (6th Cir.2010) (using the *Lynch* discussion as guidance in applying the *Lemon* test). Justice O'Connor explained that *Lemon*'s first prong, which focuses on the government's purpose, really asks "whether [the] government's actual purpose is to endorse or disapprove of religion." *Lynch,* 465 U.S. at 690, 104 S. Ct. 1355 (O'Connor, J., concurring). While the first *Lemon* prong is subjective, the second is objective. It asks "whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Id.* If either the purpose or effect of the government activity is to endorse or disapprove of religion, the activity is unconstitutional. *Id.*

Excessive entanglement—*Lemon*'s third prong—remains relevant. Under Justice O'Connor's test, such entanglement would still be grounds for striking down the activity, even if there is no hint of endorsement or disapproval. *See id.* at 689, 104 S. Ct. 1355. Since then, however, the Court has "recast *Lemon*'s entanglement inquiry . . . as simply one criterion relevant to determining a statute's effect." *Mitchell v. Helms,* 530 U.S. 793, 808, 120 S. Ct. 2530, 147 L. Ed. 2d 660 (2000) (plurality opinion) (citing *Agostini v. Felton,* 521 U.S. 203, 232–33, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)).

The final jurisprudential thread—most recently seen in *Town of Greece v. Galloway,* —— U.S. ——, 134 S. Ct. 1811, 188 L. Ed. 2d 835 (2014), but relevant since *Marsh v. Chambers,* 463 U.S. 783, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983)—involves a historical approach. It takes the view that "it is not necessary to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted. Any test the Court adopts must acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change." *Town of Greece,* 134 S. Ct. at 1819.

*Smith v. Jefferson Cnty. Bd. of School Comm'rs*, 788 F.3d 580, 586–87 (6th Cir. 2015).

Here, Petitioner's arguments that Mich. Comp. Laws § 750.520b violates the Establishment Clause are, quite frankly, disturbing and misplaced. Petitioner cites no Supreme Court case, and this Court has not located any such authority, in which the Court struck down a state statute criminalizing sexual conduct, particularly sexual conduct involving minors, on the basis that such a statute constitutes an impermissible establishment of religion. Petitioner does cite *Lawrence v. Texas*, 539 U.S. 558 (2003), in which the Supreme Court ruled unconstitutional a Texas statute criminalizing intimate sexual conduct between two persons of the same sex, in

9

support of his argument. *Lawrence*, however, was decided not on Establishment Clause grounds, but rather under the Fourteenth Amendment's Due Process Clause. *See id.* at 564. The Court concluded that the statute violated the adult defendants' liberty interest in consensual private sexual conduct. *Id*. at 578. The *Lawrence* Court took care to provide that "[t]he present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in a relationship where consent might not easily be refused." *Id.* at 578.

Quite simply, the Supreme Court has never "recognize[d] a fundamental right to procreate [or engage in other sexual activity] with a minor." *Garrison v. Trombley*, No. 05-74453, 2009 WL 311102, at *1 (E.D. Mich. Feb. 9, 2009). There is nothing inherent in Mich. Comp. Laws § 750.520b that advances or inhibits religion, and state legislatures obviously have a key interest in protecting minors from sexual abuse. Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground I.

### 2.    Ground II—Unconstitutional Ambiguity and Vagueness

Next, as his second ground for relief, Petitioner argues that Mich. Comp. Laws § 750.520b is unconstitutionality ambiguous, vague, and misleading. (§ 2254 Pet., ECF No. 1, PageID.7.) In support of that assertion, Petitioner contends that "[t]he law supposes that the average person understands the words cunnilingus and fellatio. There is no 'bright line' where penetration occurs." (*Id.*) Petitioner suggests that the trial judge "allowed that the law was vague and added more." (*Id.*)

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 525 (1994) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)); *see also Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002) (noting that a "statute is unconstitutionally vague if it does not give a 'person of ordinary intelligence a reasonable

opportunity to know what is prohibited'" (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972))).

Petitioner raised this argument on direct appeal, and the Michigan Court of Appeals rejected it, stating:

> Next, Swider contends that MCL 750.520b is unconstitutionally vague. "A statute may be unconstitutionally vague on any of three grounds: (1) it is overbroad, impinging on First Amendment freedoms, (2) it fails to provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unlimited and unstructured discretion on the trier of fact to determine whether an offense has occurred." *People v. Hrlic*, 277 Mich. App. 260, 263; 744 N.W.2d 221 (2007). Swider fails to explain why MCL 750.520b is unconstitutionally vague. Instead, he simply seems to disagree with the statutory definition of "sexual penetration" that supports his CSC-I convictions.
>
> Swider was convicted of CSC-I under MCL 750.520b(1)(a), which punishes "engag[ing] in sexual penetration with another person" when "[t]hat other person is under 13 years of age." The Legislature has defined "[s]exual penetration" to mean "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MCL 750.520a(r). Swider complains of the inclusion of cunnilingus and fellatio in the statutory definition of sexual penetration. But "[w]hen the statutory language is plain and unambiguous, the Legislature's intent is clearly expressed, and judicial construction is neither permitted nor required." *People v. Costner*, 309 Mich. App. 220, 224; 870 N.W.2d 582 (2015). Logically then, "[i]f a statute specifically defines a term, the statutory definition is controlling." *Id.* at 225. The Legislature decided that cunnilingus and fellatio constitute "sexual penetration" for purposes of MCL 750.520b(1)(a). Swider may disagree with this definition but that disagreement provides no basis for concluding that the statute is unconstitutionally vague.
>
> Swider suggests that someone might unknowingly violate MCL 750.520b because of differences between the statutory definition of "sexual penetration" and its common understanding. But the relevant question for this vagueness argument is whether the statutory language provides "fair notice" of the prohibited conduct. *See Hrlic*, 277 Mich. App. at 263. Swider does not dispute that MCL 750.520b provides fair notice that cunnilingus, which formed the basis for one of his CSC-I convictions, constitutes sexual penetration. Indeed, by defining sexual penetration as it did, the Legislature could not have been clearer that sexual penetration includes cunnilingus. Swider is simply asking us to rewrite the statute, which we lack the authority to do. *See People v Harris*, 499 Mich. 332, 356; 885 N.W.2d 832 (2016) ("It is not our role to rewrite the law or substitute our own policy judgment in the face of the text of the statute . . . .").

11

> Swider also questions the definition of penetration given by the trial court in its final instructions to the jury. Relying on *People v. Lockett*, 295 Mich. App. 165, 188; 814 NW2d 295 (2012), the trial court instructed the jury that penetration meant
>
>> sexual intercourse, cunnilingus or any other intrusion, however slight, of any part of any person's body or any object into the genital or anal openings, and *includes any intrusion, however slight, into the vagina or labia majora.* [Emphasis added.]
>
> The trial court gave this added instruction about the vagina and labia majora, per the prosecution's request, to provide greater detail on what constituted an intrusion into the "genital opening." Swider offers no legal argument disputing the inclusion of this instruction, other than to state that it showed how the prosecution sought to confuse the jury. If anything, the trial court's decision to include this more specific definition was an attempt to avoid any confusion among the jury as to what the prosecution had to prove to satisfy the element of sexual penetration. Again, Swider has not established that MCL 750.520b is unconstitutionally vague.

*See Swider*, 2023 WL 8106290, at *8–9. Although the court of appeals cited state law for the standard, it is substantially identical to the federal standard set forth *supra*.

Here, Petitioner merely relies upon the void-for-vagueness arguments he raised in the state courts—arguments that have been rejected by both the Michigan Court of Appeals and the Michigan Supreme Court. Upon review of the court of appeals' analysis, as well as the statute in question, the Court cannot agree with Petitioner that Mich. Comp. Laws § 750.520b is unconstitutionally vague. Petitioner first contends that the statute "supposes that the average person understands the words cunnilingus and fellatio." (§ 2254 Pet., ECF No. 1, PageID.7.) Quite simply, this Court concludes that a "person of average intelligence" would entirely understand those acts and understand the sexual nature of those acts. *See Tessin v. Elo*, No. 97-1882 1999 WL 68558, at *7 (6th Cir. Jan. 19, 1999). Moreover, contrary to Petitioner's suggestion that there is no "bright line" for when penetration occurs (*id.*), state law explicitly provides that sexual penetration involves, in pertinent part, "any other intrusion, **however slight**." *See* Mich. Comp. Laws § 750.520a(r). Given that language, a person of average intelligence would understand that the slightest amount of intrusion into another person's body constitutes sexual penetration for purposes

12

of Mich. Comp. Laws § 750.520b. The fact that the trial judge included the language discussed by the court of appeals when instructing the jury does not automatically equate to a conclusion that the trial court believed that § 750.520b was vague, as Petitioner suggests.

Accordingly, for the reasons set forth above, Petitioner fails to demonstrate that the court of appeals' rejection of his void-for-vagueness challenge is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to ground II.

**B.    Ground III—Protection from Prosecution Under the Michigan Constitution**

As his third ground for relief, Petitioner contends that he should have been protected from prosecution for violations of Mich. Comp. Laws § 750.520b pursuant to Article I, § 28(1) of the Michigan Constitution. (§ 2254 Pet., ECF No. 1, PageID.8.) According to Petitioner, this article protects reproductive freedom, yet "the prisons are full of people who exercised reproductive (sexual) freedom." (*Id.*) Petitioner claims that "sexual autonomy resides with the individual," and that "child sexuality is not always abusive." (*Id.*)

The Michigan Court of Appeals rejected Petitioner's argument, stating:

> Swider contends that "MCL 750.520b is a law against nature" and muses that "[o]bjectionable assault determined by the individual and not the state is a guarantee of sexual autonomy." Swider appears to be suggesting that MCL 750.520b impermissibly criminalizes sexual activity and that child sexual abuse is somehow encompassed within the "fundamental right to reproductive freedom." Const. 1963, Art. 1, § 28. That argument is disturbing and nonsensical. Unsurprisingly, Swider has provided no legal or factual support for the argument that MCL 750.520b violates the Michigan Constitution's protections for reproductive freedom. This argument is meritless and abandoned. *See McPherson*, 263 Mich. App. at 136.

*Swider*, 2023 WL 8106290, at *8.

This ground is not cognizable under federal habeas review. The extraordinary remedy of habeas corpus lies only for a violation of the United States Constitution. *See* 28 U.S.C. § 2254(a).

13

As the Supreme Court has noted, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Accordingly, Petitioner's argument that Mich. Comp. Laws § 750.520b is unconstitutional under Article I, § 28(1) of the Michigan Constitution fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). For that reason alone, Petitioner is not entitled to relief with respect to habeas ground III.

### C.  Ground IV—Evidentiary Issues and Related Ineffective Assistance of Counsel

As his fourth and final ground for relief, Petitioner asserts that his "attorney rested the defense before all my evidence was in. Proofs reopened by evidence edited." (§ 2254 Pet., ECF No. 1, PageID.10.) In the section requesting supporting facts, Petitioner references a text message on his phone that said "I'm looking at life in prison." (*Id.*) He contends that the trial court did not allow this text message as evidence during his trial. (*Id.*) According to Petitioner, the jury should have been told that Petitioner faced a mandatory minimum of 25 years on the CSC-I charges if convicted. (*Id.*) Petitioner contends that the jury "decides" in a capital case, and that this "is arguably a capital case." (*Id.*)

As an initial matter, Petitioner acknowledges that he did not raise this ground on direct appeal. (*Id.*) He faults his attorney for not doing so. (*Id.*) Although the Court may not grant habeas relief on an unexhausted claim, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). As set forth fully below, Petitioner's fourth ground for relief is meritless.

14

Petitioner appears to take issue with the fact that the trial court did not allow the admission of the text message in question as evidence during Petitioner's trial. As an initial matter, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, any decision by the trial court that the text message should be disallowed under state rules of evidence is, therefore, axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860

15

(6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent establishing a due process right to admission of the text message at issue. First, Petitioner's suggestion that this was arguably a capital case is misplaced. The Court does note that Petitioner is currently 78 years old and, therefore, faces the likelihood of passing away while incarcerated because of the mandatory 25-year minimum sentence. Despite that fact, however, Petitioner was never facing capital charges, and so his assertion that this is arguably a capital case is misplaced.

In any event, clearly established Supreme Court precedent is contrary to Petitioner's assertion that the jury was entitled to know that he faced a mandatory minimum of 25 years if convicted. "It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). Thus, "as a general matter, jurors are not informed of mandatory minimum or maximum sentences, nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense." *Id.* at 586–87.

Here, despite Petitioner's misplaced assertion that the fact that he will likely die in prison transformed his criminal proceedings into a capital case, the jury had no sentencing function after finding Petitioner guilty of the five CSC-I and two CSC-II offenses. Thus, "argument about possible punishment in [Petitioner's] case is foreclosed by well-settled precedent." *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996). Accordingly, Petitioner had no due process right to

16

admission of the text message at issue and any information regarding the mandatory minimum sentence.

Petitioner also appears to fault counsel for resting before "all [Petitioner's] evidence was in," and appears to fault counsel for not successfully having the text message and evidence regarding the mandatory minimum admitted.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Here, Petitioner fails to explain what evidence he believes counsel should have admitted before the defense rested. Petitioner's conclusory allegation is insufficient to justify federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (noting that conclusory allegations

17

of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012) (citing *Workman* and affirming the denial of habeas relief for conclusory claims). Moreover, any argument by counsel regarding admission of the text message and that the jury had a right to know that Petitioner was facing a mandatory minimum of 25 years if convicted would have wholly lacked merit for the reasons set forth *supra*, and "[n]o prejudice flows from the failure to raise a meritless claim." *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

Accordingly, for all the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a

18

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: May 12, 2025                              /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE